UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHLEY HAGER,<br>Plaintiff,<br><br>v.<br><br>THE TJX COMPANIES, INC.,<br>      Defendant. | Civil Action No. 18- |

**COMPLAINT**

**INTRODUCTION**

This is an action brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (hereinafter "ERIS") by Ashley Hager (hereinafter "Hager") against The TJX Companies, Inc. (hereinafter "TJX"). Hager's father, the late Martin Horback (hereinafter "Horback") was an employee of TJX for over 32 years. In early 2017, Horback was diagnosed with lung cancer and his illness forced him to take sick leave from work. In July of 2017, concerned with his failing health, and with the help of Hager, he began to take steps to ensure that the pension benefits that he had earned over his long career would be paid and that Hager would be the beneficiary of his pension benefits if he were to die. At Horback's request, Hager contacted human resources at TJX in late July of 2017 and advised them as to her father's failing health. At this time, Hager was assured by the TJX human resources supervisor that TJX valued Horback's years with the company and that they wanted to get him "as much benefits as possible." Hager relied upon the advice and counsel of TJX's Human Resources Department and continued to follow-up with them over several weeks. However, owing to the dilatory behavior and obfuscation of TJX's human resource department, Horback's paperwork was not completed

1

until shortly before his death on August 20, 2017. Shortly thereafter, Hager submitted to TJX the completed paperwork in which her father had designated her as the beneficiary of his pension benefits. She was then advised shortly thereafter, that the documents were submitted too late and that all benefits were terminated by Horback's death.

## PARTIES

1. The Plaintiff, Ashley Hager (hereinafter "Hager") is an individual residing at 17 Hyde Road, Charlton, in the County of Worcester, Massachusetts.

2. The Defendant, The TJX Companies, Inc. (hereinafter "TJX") is a Delaware corporation with a principal place of business and headquarters located at 770 Cochituate Road, Framingham, in the County of Middlesex, Massachusetts, and employs individuals in Massachusetts and throughout the country.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (hereinafter ERISA) and specifically under 29 U.S.C sec. 1132(a)(1)(B).

4. This Court has personal jurisdiction over the Defendant because the Defendant conducts business and maintains its principle place of business within this District.

5. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a), in that Defendants are subject to personal jurisdiction in this Court at the time this action was commenced and pursuant to 28 U.S.C. §§ 1391(b)(c), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Defendants maintain

corporate offices, conduct business and reside in this District.

## STATEMENT OF THE CLAIM

6. The Defendant, TJX provides employee retirement benefits to its employees within the meaning of ERISA (hereinafter "Plan").

7. Horback was an employee of TJX for approximately 32 years until shortly before his death.

8. Horback was diagnosed with lung cancer in early 2017 and ceased being able to work.

9. After using up his available sick time, Horback with the help of Hager, made inquiries to TJX's Human Resource Department as to his retirement and disability benefits.

10. Hager was Horback's daughter and was acting under a Power of Attorney granted by Horback.

11. On or about July 24, 2017 Hager contacted TJX's Human Resources Department concerning Martin Hornback's benefits.

12. Specifically, Hager was inquiring to TJX as to whether her father should retire or go on long term disability benefits.

13. Hager was concerned with the effect that either of these options would have on her father's health insurance, life insurance and pension benefits.

14. It was not until ten days later on August 3, 2017 that Roxanne Barden, TJX's Human Resources Supervisor (hereinafter "Barden"), contacted Ms. Hager concerning her query via email.

15. In her email, Barden did not provide Hager with any answers to her inquiries, but instead stated "Hi Ashley – I did not want you to think I forgot about you - I did get some answers that

3

my Manager of HR and I decided to take further up to the Corporate level. So until I get a final answer from them I did not want to tell you something different. My Manager and I just want to make sure we take every step necessary to get the most benefits we can for Marty – (your dad) as he is a long term associate and we value his time with the company."

16. Barden's email further stated: "I am on vacation next week – but my Manager will be here to speak with the Corporate team regarding the questions you had and some we had on our end. When I get back in a week, I will touch base with her to see what the results are and let you know everything at that time."

17. Barden's concluded her email by stating "I appreciate your patience – again, we are trying to do as much as we can to make sure Marty gets as much benefits as possible. Thank you again."

18. At the time of her August 3, 2017 email to Hager, Barden was aware that Horback was extremely ill with terminal lung cancer.

19. Concerned about her Father's failing health, Hager called and emailed Barden on Monday, August 14, 2018 when Barden was due to return from vacation.

20. In her email to Barden on August 14, 2018, Hager stated "I don't feel I have a lot of time to get this stuff squared away."

21. Hager also told Barden during a phone conversation that same day that doctors had told her that her dad only had a short time to live.

22. On August 15, 2017 Hager spoke with Barden who advised her that her dad (Horback) needed to retire right away because if he passed away and wasn't retired that he would lose his pension benefits because he was not married.

23. Barden further took down all of Hager's information to add her as a beneficiary to his

4

pension benefit paperwork.

24. Barden also advised Hager that they could not send out the pension benefit paperwork until her father (Horback) was officially retired.

25. On the morning of August 16, 2017, Horback was officially retired from TJX.

26. Hager requested that the necessary paperwork be emailed or faxed to her but was then informed by Barden that the benefit package had to be sent by regular mail to her father's (Horback's) address.

27. TJX mailed the benefits package to Horback's home which was received by Hagar on Saturday, August 19, 2017.

28. Horback, with the help of Hager, completed and executed the benefit package on Saturday, August 19, 2017.

29. As a long-term employee of TJX, Horback was entitled to elect from several benefit options under the Plan which included an option in the form of "20 Years Certain & Life Annuity."

30. Horback did elect to receive his benefits under the Plan in the form of "20 Years Certain & Life Annuity."

31. As Horback was unmarried, he named his daughter, Hager, as his beneficiary under the Plan.

32. Under the terms of TJX's Benefit Election Form and Plan, if Horback died prior to receiving 240 monthly payments, TJX agreed that "the balance of such 240 payments will be made to your beneficiary in the amount of $981.55 per month."

33. Horback died on Sunday, August 20, 2017.

34. On Monday, August 21, 2018 Hager called Barden to let her know what had happened

5

and to find out what needed to be done, but Barden was out of the office on this date.

35. In Tuesday, August 22, 2018 Hager faxed the completed pension benefits form to TJX's Human Resource Department.

36. The following week, Hager again attempted to call Barden and other TJX Human Resource personnel, but everyone was on vacation.

37. Finally, on or about September 1, 2017 Nicholas Mondilor, a TJX Pension Specialist, informed Ms. Hager that because her father, died before he received his first check, that his beneficiary was not entitled to receive any of the pension benefits.

38. No one from TJX had ever informed Hager that Horback had to receive a check before he died despite the time sensitive nature of her father's illness.

39. Hager requested to speak to a higher-level manager about this issue but no one at TJX has responded to her since September of 2017.

## COUNT I – BREACH OF FIDUCIARY DUTY

40. Plaintiff restates and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

41. ERISA imposes strict fiduciary duties of loyalty and prudence upon TJX as a fiduciary of its Plan. 29 U.S.C. § 1104(a)(1).

42. "The fiduciary obligations of the [fiduciaries] to the participants and beneficiaries of an ERISA plan are those of trustees of an express trust—the highest known to the law." *Hill v. State Street Corp.*, 2011 WL 3420439, at *28 (D. Mass. Aug. 3, 2011) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

43. TJX violated the duties of loyalty and prudence through dilatory behavior and

obfuscation in responding to Horback and/or Hager.

44.	TJX violated the duty of loyalty and prudence by failing to timely disclose the necessary information to Horback and/or Hager, for Horback to participate in its Plan.

45.	In taking the above actions, TJX failed to discharge their duties with respect to the Plan solely in the interest of the Plan and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan. TJX's acts violate standards in the industry and contradict the reasonable practices of other prudent fiduciaries. TJX acted for the purpose of benefitting themselves.

46.	TJX therefore breached their fiduciary duty of loyalty and prudence under 29 U.S.C. §1104(a)(1).

47.	As a direct and proximate result of these breaches, Horback and/or his beneficiary, Hager, was denied benefits under TJX's Plan totaling $235,572.00.

## COUNT II – EQUITABLE RESTITUTION

48.	Plaintiff restates and incorporate the allegations contained in the foregoing paragraphs as though fully set forth here.

49.	TJX is an employer of participants of the Plan as defined by 29 U.S.C. § 1002(5).

50.	29 U.S.C. § 1103(c)(1) provides that the assets of an employee benefit plan "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries."

51.	Due to TJX's dilatory actions and obfuscations to Horback and/or Hager, the funds that should have been paid out to Hager inured to the benefit of TJX.

52. Pursuant to 29 U.S.C. § 1132(a)(3), TJX should be required to disgorge all Plan assets that have inured to it as a result of its breach of fiduciary duty. These assets should be paid to Hager under principles of equitable restitution.

53. Under 29 U.S.C. § 1132(a)(3), a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ashley Hager, prays for the following relief:

A. A declaration that the Defendant has breached its fiduciary duties under ERISA;
B. A declaration that Plan assets inured to the benefit of the defendant in violation of 29 U.S.C. § 1103;
C. Judgment in her favor and against the Defendant for the amount of all benefits due and owing under the Defendants benefit Plan to Horback and/or his beneficiaries;
D. An order granting equitable restitution and other appropriate equitable monetary relief against Defendant;
E. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and
F. An award of such other and further relief as the Court deems equitable and just.

August 21, 2018

Respectfully submitted,
PLAINTIFF,
Ashley Hager,

By her attorneys:

*/s/ Richard E. Levine*
Richard E. Levine (BBO #672675)
*rlevine@stanzlerlevine.com*
Liam C. Floyd (BBO #559021)
*lfloyd@stanzlerlevine.com*
STANZLER LEVINE, LLC
65 William Street, Suite 205
Wellesley, MA  02481
Phone: (617) 482-3198